IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY BECK, | No. 4:24-CV-02247 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| C.O. BECKLY, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JUNE 16, 2025

Plaintiff Anthony Beck filed the instant *pro se* civil rights lawsuit alleging constitutional violations by officials at the State Correctional Institution, Benner Township (SCI Benner), in Bellefonte, Pennsylvania. His Section 1983[1] claims sound in excessive force, failure to protect, and retaliation. The Court will dismiss in part Beck's complaint pursuant to 28 U.S.C. § 1915A(b)(1).

I.   BACKGROUND

At all times relevant to his complaint, Beck was incarcerated at SCI Benner. He is currently housed at SCI Huntingdon.[2] Beck initially lodged a document titled "motion for special relief / injunction."[3] That document appears to seek a

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).
[2]  *See* Doc. 11.
[3]  Doc. 1.

preliminary injunction, but it did not include a corresponding complaint. Several weeks later, Beck lodged a formal complaint that more fully set forth his Section 1983 claims.[4] The Court will therefore consider the formal complaint at Section 1915A(a) screening rather than Beck's initial filing.

In his complaint, Beck claims that multiple corrections officers at SCI Benner violated his Eighth and First Amendment rights. He first alleges that, on December 16, 2024, defendants Beckly and Michaels intentionally "slam[m]ed" his hand and arm in the cell door's "wicket" (or aperture), trapping his hand in the wicket and causing intense pain.[5] Beck avers that Beckly and Michaels threatened to break his hand for filing grievances and called him a "rat."[6] He further avers that another corrections officer, Diel, arrived during this incident and encouraged and assisted Beckly and Michaels in pushing the wicket's lid down on Beck's trapped hand, also commenting negatively on Beck's grievances.[7] Beck alleges that the officers did not release his arm until other nearby prisoners voiced concern for Beck and threatened to report the alleged abuse.[8] Beck was eventually taken to the medical unit and given ice and a hand wrap, and then the next day was given a splint while he waited for an x-ray.[9]

---

[4] *See generally* Doc. 6.
[5] *Id.* ¶¶ 26-30.
[6] *Id.* ¶¶ 30, 33.
[7] *Id.* ¶ 31.
[8] *Id.* ¶ 32.
[9] *Id.* ¶¶ 46-47.

Beck next recounts that, on December 17, 2024, he was "bird bathing" for fear of coming out of his cell to shower and had covered the window on his cell door for privacy.[10] He alleges that, when he refused to uncover his window, defendant Gailey sprayed pepper spray into his cell.[11] Beck further asserts that, when he questioned Gailey about why he had deployed pepper spray, Gailey responded that it was for filing a grievance on one of his "good friends" and for threatening to file a grievance on Gailey.[12]

The final alleged incident occurred on January 3, 2025.[13] Beck states that he was permitted a 15-minute phone call and called his mother.[14] After 10 minutes on the phone with his mother, Michaels and Frisco arrived to take Beck back to his cell, but he informed them that he was not finished with his phone call.[15] Beck alleges that Michaels and Frisco threatened that he would be "sprayed" (presumably with pepper spray) if he did not get off the phone, but Beck responded that he was approved for a 15-minute call.[16] After ending his call around minute 14, Beck was handcuffed and taken back to his cell by Michaels and Frisco.[17]

---

[10] *Id.* ¶¶ 48-49.
[11] *Id.* ¶ 53.
[12] *Id.* ¶¶ 52, 54.
[13] *Id.* ¶ 59.
[14] *Id.* ¶¶ 60, 61, 63.
[15] *Id.* ¶¶ 63, 64.
[16] Id. ¶ 66.
[17] *Id.* ¶¶ 67-70.

3

When they arrived at Beck's cell, Beck alleges that Michaels and Frisco started to use excessive force by "slam[m]ing" him "to the cage."[18] Sgt. Fleck then allegedly "ran over and punched [Beck] multiple times in the face," causing a cut above Beck's right eye.[19] Beck alleges that he was then "thrown to the ground," where the officers continued to hit him on the back and head, simultaneously stating "this is what we do to rats."[20] Beck was again taken to medical after the incident.[21]

Beck lodged his initial "motion for special relief / injunction" in this Court on December 26, 2024.[22] Beck, however, had not paid the filing fee or moved for leave to proceed *in forma pauperis* (IFP).[23] The Clerk of Court, accordingly, issued the standard 30-Day Administrative Order to Beck, notifying him that he needed to either pay the filing fee for his lawsuit or submit a properly completed application to proceed IFP.[24] The Court received Beck's actual complaint[25] on January 22, 2025, along with his motion for leave to proceed IFP and a copy of his prisoner trust fund account statement.[26]

---

[18] *Id.* ¶ 70.
[19] *Id.* ¶ 71.
[20] *Id.* ¶ 72.
[21] *Id.* ¶ 74.
[22] *See generally* Doc. 1.
[23] *See* Doc. 3.
[24] *See id.*
[25] Doc. 6. Beck did not fully date his complaint. It is dated only "January - - 2025." *See id.* at 19.
[26] Docs. 4, 5, respectively.

4

In his complaint, Beck sues nine SCI Benner corrections officers: Beckly, Michaels, Frisco, Emigh, Gailey, Diel, McMan, Sergeant R. Fleck, and Lieutenant M. Harlow.[27] He asserts the following claims: (1) Eighth Amendment excessive force against Beckly, Michaels, Frisco, Sgt. Fleck, Gailey, and Diel; (2) Eighth Amendment failure to protect against Emigh, McMan, and Lt. Harlow; and (3) First Amendment retaliation against all Defendants.[28] He seeks a declaration that his constitutional rights were violated, preliminary and permanent injunctive relief (in the form of ordering Defendants "to cease their physical violence and threats"), compensatory damages, and costs.[29]

## II. STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[30] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[31] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to

---

[27] *Id.* ¶¶ 4-12.
[28] *See id.* ¶¶ 79-88.
[29] *Id.* ¶¶ 90-95.
[30] *See* 28 U.S.C. § 1915A(a).
[31] *Id.* § 1915A(b)(1).

screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[32]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[33] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[34] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[35]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[36] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[37] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal

---

[32] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
[33] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[34] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[35] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[36] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[37] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[38]  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[39]  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[40]

Because Beck proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[41]  This is particularly true when the *pro se* litigant, like Beck, is incarcerated.[42]

## III.  DISCUSSION

Upon review of Beck's complaint, several of his Section 1983 claims must be dismissed under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  The Court will address his pleading deficiencies in turn.

### A.  Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[43]  Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal

---

[38] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[39] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[40] *Iqbal*, 556 U.S. at 681.
[41] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
[42] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[43] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

involvement in the alleged misconduct."[44]  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[45]  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[46]

Beck asserts Section 1983 claims against nine Defendants, but three of the named corrections officers plainly had no personal involvement in the alleged constitutional misconduct.  As to Emigh, Beck's only allegation is that several hours after the December 16 incident, he asked Emigh for medical assistance and Emigh allegedly responded by laughing and saying, "so you can tell on us?"[47]  Beck's single allegation against McMan is that McMan contacted him over the intercom regarding his window being covered and Beck ignored him.[48]  Finally, as to Lt. Harlow, Beck states only that Lt. Harlow looked at his injured hand and arm after the wicket incident and stated, "[I]t looks broke ma[ybe] you will stop putting

---

[44] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).
[45] *Id.* (quoting *Rode*, 845 F.2d at 1207).
[46] *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").
[47] Doc. 6 ¶ 37.
[48] *Id.* ¶ 41.

that paper work [sic] in but I'm going to call medical for you so I don't get in trouble."[49] None of these allegations implicates personal involvement in a constitutional violation.

However, to plausibly plead a Section 1983 claim, Beck must specify each Defendant's personal involvement in the alleged constitutional infringement. Accordingly, the Court must dismiss the Section 1983 claims against Emigh, McMan, and Lt. Harlow pursuant to Section 1915A(b)(1) for lack of personal involvement.

### B. Eighth Amendment Excessive Force

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[50] The factors analyzed when making this inquiry include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response."[51] The

---

[49] *Id.* ¶ 44.
[50] *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).
[51] *Id.* (quoting *Smith*, 293 F.3d at 649).

9

Eighth Amendment, however, "does not protect an inmate against an objectively *de minimis* use of force."[52]

Beck has plausibly alleged claims of excessive force against Beckly, Michaels, Diel, Gailey, Frisco, and Sgt. Fleck. Beck's allegations that his arm was intentionally closed in the lid of the aperture, that he was pepper sprayed without proper justification, and that he was beaten by several officers after his phone call are sufficient to state Eighth Amendment excessive force claims.

### C. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[53] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[54]

---

[52] *Smith*, 293 F.3d at 649 (citation omitted).
[53] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[54] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

Beck appears to assert First Amendment retaliation claims against all Defendants, claiming that they retaliated against him for filing grievances. However, he only plausibly alleges a retaliation claim against Beckly, Michaels, Diel, and Gailey.

Filing a grievance is protected First Amendment conduct.[55] However, Beck has not plausibly alleged the other necessary elements for his retaliation claims against Emigh, McMan, Frisco, Sgt. Fleck, or Lt. Harlow. As to Emigh, McMan, and Lt. Harlow, Beck has not alleged that these officials took any adverse action against him and therefore, logically, he has not alleged that such adverse action was substantially motivated by his protected conduct. As to Frisco and Sgt. Fleck, while their alleged assaultive conduct could constitute adverse action, Beck has not plausibly alleged that the January 3, 2025 assault was substantially motivated by Beck's grievances.[56] Accordingly, the retaliation claims must be dismissed pursuant to Section 1915A(b)(1) against all Defendants except Beckly, Michaels, Diel, and Gailey.

---

[55] *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Mitchell*, 318 F.3d at 530).
[56] In one paragraph, Beck alleges that unspecified "defendants" stated, "[T]his is what we do to rats" during the January 3, 2025 assault. *See* Doc. 6 ¶ 72. This single paragraph, however, does not plausibly allege causation, as it neither identifies who made the alleged comment nor references what protected conduct was the impetus for the comment or assault.

11

### D.     Eighth Amendment Failure to Protect

To plead an Eighth Amendment failure-to-protect claim against a prison official, the inmate must plausibly allege that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm."[57] In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[58] Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence."[59]

Beck asserts a failure-to-protect (or failure-to-intervene)[60] claim against Emigh, McMan, and Lt. Harlow.  However, as previously noted, Beck has failed to plausibly allege any personal involvement by these Defendants in a constitutional violation, including failure to protect him from excessive force by other corrections officers.  Without pleading personal involvement, it follows that Beck has clearly failed to plead deliberate indifference by these Defendants to a substantial risk to

---

[57] *Bistrian*, 696 F.3d at 367.
[58] *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).
[59] *Id.* (quoting *Farmer*, 511 U.S. at 842).
[60] *See Mensinger*, 293 F.3d at 650-51 (holding that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so").

Beck's safety. Beck has likewise failed to plead causation, *i.e.*, that his harm was caused by the deliberate indifference of Emigh, McMan, or Lt. Harlow. Accordingly, all Eighth Amendment failure-to-protect or failure-to-intervene claims must be dismissed under Section 1915A(b)(1).

### E.   Motion for Preliminary Injunction

As explained above, Beck initially sought a preliminary injunction against the SCI Benner corrections officers named in his complaint. Specifically, Beck requested an order directing Defendants "to cease their physical violence and threats." However, since filing his lawsuit, Beck has been transferred out of SCI Benner to SCI Huntingdon, and transfer generally moots claims for equitable relief.[61] Beck's motion for a preliminary injunction and his request for permanent injunctive relief, therefore, will be dismissed as moot.

### F.   Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[62] Beck will be granted leave to amend in the event that he can plead facts—under the requirements set forth in Federal Rule of Civil Procedure 11(b)(3)—that could cure the deficiencies outlined herein.

---

[61] *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993).

[62] *Grayson*, 293 F.3d at 114.

If Beck chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his claims in short, concise, and plain statements, and in sequentially numbered paragraphs (much like his first formal complaint). Beck must include all claims for relief, even the Section 1983 claims that survived this Court's sufficiency review. He must leave one-inch margins on all four sides of his pleading.[63] Any exhibits or documents he wishes to present should be attached to his amended complaint. Beck must name proper defendants and specify the offending actions taken by a particular defendant. He must also sign the amended complaint and indicate the nature of the relief sought.

If Beck does not timely file an amended complaint, this case will proceed on the following claims: (1) Eighth Amendment excessive force against Beckly, Michaels, Diel, Gailey, Frisco, and Sgt. Fleck; and (2) First Amendment retaliation against Beckly, Micheals, Diel, and Gailey.

## IV.  CONCLUSION

Based on the foregoing, the Court will dismiss in part Beck's Section 1983 complaint pursuant to 28 U.S.C. § 1915A(b)(1). Beck, if he desires, may file an amended complaint in accordance with this Memorandum. If no amended

---

[63] *See* LOCAL RULE OF COURT 5.1.

complaint is timely filed, the case will proceed on the remaining claims that Beck has plausibly alleged. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge